Proceed. Good morning, Your Honor. Stacey Tolchin for the Plaintiff Appellants Quezada Ibarra and Quezada Pena. I would like to reserve four minutes of my time for rebuttal. Okay, Counsel. Please be reminded that the time shown on the clock is your total time remaining. Yes, Your Honor. Thank you. Plaintiffs are a husband and wife with three children, two of whom are United States citizens, whose family has been torn apart because Plaintiff Quezada Ibarra has been found to be permanently inadmissible to the U.S. The basis for this finding is a purely legal interpretation of the Immigration and Nationality Act and the provision contained at 8 U.S.C. 1182A9C. The dispute in this case is whether this unlawful presence bar applies to time spent in the U.S. as a minor. Now, had Plaintiff Ibarra, Quezada Ibarra, qualified for adjustment of status in the U.S., he would have applied in the U.S. and there would be a decision from the U.S. CIS. But because he did not qualify for adjustment of status, he had to apply before the Department of State and proceed abroad for the immigrant visa. That is why we have a denial of residency from the Department of State, who is applying Department of State policy. Now, this case raises essentially two issues. One, as to whether the doctrine of consular non-reviewability applies to purely statutory interpretations of the Immigration and Nationality Act. And two, whether the provisions of 8 U.S.C. 1182A9C incorporate in the exceptions to the accrual of unlawful presence contained at 1182A9B3. Now, first, as to the doctrine of consular non-reviewability, the doctrine is a standard of review that is applied to consular decisions shielding discretionary consular decisions from review unless constitutional rights are implicated and where a consular officer acts in bad faith. Now, while this case involved the denial of a visa, this is not a case where the consular official had any discretionary authority to make a decision. Rather, the official was bound by Department of State policy, which adopted U.S. CIS policy, that 8 U.S.C. 1182A9C applies to time spent in the U.S. as a minor. And the State Department's own regulation at 22 CFR 42.81D is clear that rulings of the Department concerning interpretations of law as distinguished from application of lot of facts are binding upon consular officers. So, this is a case involving an interpretation of the INA and not the application of lot of facts as was the case in Allen v. Melis. Therefore, the doctrine does not apply. Here, the individual officer had no discretion and was bound by DOS policy. In Trump v. Hawaii, the Supreme Court recognized this ongoing issue of whether consular non-reviewability applies to interpretations of the INA but then declined to address the issue. The Court should now conclusively find that the statutory interpretation principles of Chevron and its progeny apply to interpretations of the INA and not the doctrine of consular non-reviewability. And on this point, I just wanted to direct the Court to a number of cases that support this. The Allende case in the First Circuit, this Circuit's decision in Singh v. Clinton, Abu Zarq in the D.C. Circuit, and Mulligan v. Schultz in the Fifth Circuit. These are all consular or Department of State issues that are decided under the Chevron analysis. Now, second as to the merits of the claim, the Court should apply Chevron in the first instance. And of course, the big issue so far in this case is whether the Ninth Circuit's case in Acosta is binding. Now, Acosta does not apply for five reasons. And for these same reasons, the Court should find that the statute is ambiguous as to whether 1182A9C incorporates in the exceptions of 1182A9B3. And if the Court doesn't mind, I'd like to direct the Court to pages 102 and 103 of the record because, obviously, these statutory provisions are quite complicated, so it's much easier to look directly at the text. Now, as to Acosta, first, Acosta was overruled by the en banc court in Garfias v. Rodriguez and is therefore no longer binding. Of course, it may be considered persuasive, but it's not binding. In addition, Acosta does not consider this precise issue of the exceptions to the construction of a lawful presence. The issue in Acosta was the discretionary waiver, and that's a different provision, and the statutory analysis is different. And so any reference to whether the exceptions are incorporated into 1182A9C is dicta because the waiver is an entirely different analysis. Third, Acosta is not binding because it only looks at a specific piecemeal provision of the INA and doesn't look at the INA as a whole. There's a number of important provisions of the INA that have to be considered. The first is the effective date that's contained in Section 301B3 of IHRA-IHRA, and that is at page 104 of the record. And what it says is that the treatment of unlawful presence applies only to time that's accrued after the effective date of the act. So it's forward-thinking, perspective only, because it doesn't penalize people who came unlawfully to the U.S. before this was the law. It makes sense. But what's notable is that in this provision, it only references 1182A9B and not C. And so the fact that C is not referenced here indicates at least or makes it ambiguous as to whether C incorporates in those exceptions listed under B3. Can I ask you just to jump ahead maybe in the analysis? Let's say that we're persuaded on everything you've said so far and we agree that ACOSTA doesn't seal the deal against your clients and that the statute is ambiguous. I guess I don't see how that helps you because it seems to me there are a couple of reasonable ways to interpret the statute and the reading that the government is advocating is not crazy by any means. So help me understand why you think it's so unreasonable that at Step 2 of Chevron, we could say it's embarrassing. And of course, we're going to Skidmore, right, because it's unpublished and this is a memo. So under Skidmore is the reasoning of the memo persuasive. I mean, the first thing that really comes out here is that applying 1182A9C to time spent in the U.S. as a minor means you apply this to a 3-year-old that comes with his parents, leaves at age 6, and comes back at age 7. So somebody who had no control or possibility of accruing any intent to break the law is barred permanently from living in the U.S. And what's interesting here is that the memo actually says the reason that we're going to apply 1182A9C to those folks under minors included, the folks that fall under the exceptions, is that somebody is more culpable. Well, a minor is not culpable for actions that are accrued under the age of 18. And again, this statute applies to a 3-year-old. So relying on the rationale of culpability alone is not something that's persuasive. The other point that's really important is that the memo has all of these other categories of people that are not subject to 1182A9C while still minors are, and it doesn't make any sense. Under the memo, people who have pending adjustment of status applications are exempt. People who have pending temporary protected status are exempt. People who get voluntary departure are exempt. There's no rational explanation for having these people be exempt while at the same time providing that 1182, the exceptions, the B3 exceptions, such as a minor, are still subject. A minor is the least culpable out of any person in this category. So it's not persuasive to apply that. I think the clause, though, of the statute that refers you back to subparagraph little i, I mean, that to me is the hardest obstacle for your argument to prevail here, right? Your Honor, I agree. I think that is the hardest part. If you look again at pages 102 and 103 of the record, you'll see what Congress was given. And if you look specifically at the top of 103, you'll see that exceptions, which is where the minor exception is included, it's a subset and indented under construction of unlawful presence. So when Congress was given this, it's not clear if i is a scrivener's error and if they meant to put actually 2, i, i, right, or if they meant to just apply this exception to the 3 and 10-year bar. But again, that's why we think that the statute is ambiguous as to this issue. But keep in mind that the statute contains no exceptions to the accrual of unlawful presence under 1182A9C. The only exception when IRA, IRA was instituted was a discretionary waiver, and that waiver requires somebody to be outside of the U.S. for 10 years before they can even apply. So that means that the way the statute is written, there would be no exceptions to the permanent bar. And that doesn't seem to make any sense besides minors. For asylees, family unity, battered women, these are all people listed under the B3 exceptions. These are people that are here either with no culpability or with permission of Congress or the immigration service. So to bar them under A9C, it's just not clear. It's not unambiguous for sure. And given policy from USCIS, there's no rational distinction for barring minors while at the same time allowing all of these other categories. I'm a little unclear about one thing. Are you challenging the State Department's interpretation of the statute in the Foreign Affairs Manual or the USCIS interpretation in the 2009 memorandum? Your Honor, there is no formal adoption from the Department of State of the memo. So if the memo does apply, we go to Skidmore. If the memo does not apply, there's no deference at all. This court only looks at the statute as new, and that's the governing law until the agency makes an interpretation. And that's what Garfield Rodriguez, the en banc decision, talks about, is that this court can look at an ambiguous statute and interpret it, and if the agency issues a different decision down the road, it'll look at whether or not that's reasonable or should be deferred to. But the only indication we have that the USCIS memo was adopted is from page 100, which is an email from LegalNet citing the actual USCIS memo. Otherwise, the FAM does not reference the memo, and nothing else is issued from the Department of State putting out any rationale as to why they believe that minors should be subject to the permanent bar. And if there's nothing further, I'd like to reserve my remaining time. All right. Thank you, counsel. We'll hear from the government. May I please the court? Good morning, Your Honors. My name is Timonique Peoples, and I'm here on behalf of the defense appellees. Your Honors, none of the issues that plaintiffs raised here are new. The court has soundly rejected the exact same arguments that they make here, and they provided no reason why the court should now take a different approach. Plaintiffs challenge the visa denial on constitutional and statutory grounds. I'll start with the constitutional grounds, then I'll move on to the statutory, unless the court would like me to do the reverse. Maybe just do it in the reverse. Okay. Plaintiffs contend, as their statutory claim, that the consular officer erred in construing the minor exception in subsection B to not apply to C. But in Allen, this court held that the APA does not permit review of a consular officer's visa determination on the merits, even if it's based on legal error. So, therefore, regardless of how they cast their claim as being a purely statutory interpretation claim, the contested statutory interpretation is integrated into the decision, and they're simply challenging the consular officer's decision to apply the statute to the facts of Mr. Barr's case. In that instance, there's no review. Ultimately, they want the officer to revisit the visa decision, which the Doctrine of Consular Nonreviewability plainly precludes, as this court said in Capistrano. Allen is squarely on point. In that case, the plaintiffs there tried to argue that the consular officer committed legal error, and the court rejected the argument that the Doctrine of Consular Nonreviewability has an exception for such review. The court reasoned that doing so would convert the Doctrine of Consular Nonreviewability into consular reviewability. The court reasoned that the consular officer doesn't make legal decisions, but need only have a reason to believe that the applicant is ineligible, and further concluded that it would make no sense to allow unlimited statutory review of visa denials while narrowly constraining constitutional review of visa denials. Allen is dispositive on this issue. Plaintiffs cannot bring this statutory claim, and they really cite no case that's controlling or persuasive that says otherwise. Their cases do not involve a challenge to a consular officer's individual visa denial, or their narrow holdings that are limited to facts that are not present here, not to mention that many of their cited cases are out-of-circuit cases. Additionally, courts in this very similar circumstance, under really the exact same facts, have rejected the challenge that plaintiffs try to make here. In Garciarazzo, Dominguez, Fierros, and Moraira, the plaintiffs there all raised statutory claims to a consular officer's visa denial, saying that the officer erred in failing to apply the minor exception in subsection B to C, and in each of those cases the court said there was no judicial review under the APA. The only review allowed is under a limited constitutional inquiry under DEN. Can you just address, I hear all of those arguments, but let's say that we reach the merits of the statutory interpretation issue. Can you just address that head-on? Sure. The consular officer committed no error here in saying that there's no minor exception in subsection C. The plain text of the statute supports the consular officer's decision. The minor exception in 1182A9B3-1 references Clause 1, which refers to 1182A9B1, not C. Notably, the Acosta Court made the same conclusion that the consular officer did. In that case, this court recognized that both sections, which is subsection B and C, share the same definition of unlawful presence, but that doesn't mean that they both share the same waivers and exceptions. The court there held that a B waiver was not incorporated into 1189C, and even though Acosta dealt with the waiver, its reasoning applies with equal force to the respective exceptions that are also in B. Numerous courts have followed Acosta and adopted its reasoning under Chevron Step 1, meaning that those courts found the language was plain and unambiguous. We don't need to go any further and go on to Step 2 and talk about what's entitled to deference or what's persuasive. The fact is the language is plain and clear, and the court should give effect to that language. Is it true, though, that in the past some consular offices have, in fact, applied the minor exception to subsection C as well? Your Honor, I'm not aware of that instance. I'm not sure. I don't have an answer for that. I know that certainly in this case and the cases that I cited, and the BIA has also said that this minor exception that's in B does not apply to C. I don't know how long that's been the policy or the procedure, but to answer your question, I'm just not sure. But the courts are pretty consistent that have decided this issue, that the language is plain, clear, unambiguous. The exceptions in B apply to B, and the exceptions in C apply to C. Okay. And so despite – Why is it rational? Why was it rational for Congress to impose this policy, especially given the hypothetical that your opponent cites where somebody enters and reenters both times as a minor? What's the rationality behind that regime? Well, I would say as a factual matter in this case, Mr. Barr did not enter and reenter as a minor. He entered as a minor, and he reentered as an adult. I know. But your opponent is obviously correct that if we adopt the position you're advocating, it would also bar somebody who entered and reentered as a minor, right? You don't deny that in your brief. Sure. But that's what the statute provides for. I mean, Congress deliberately drafted these provisions in this manner, and the result may be unfortunate in some instances, but that is what Congress has declared. Okay. That's what I'm asking. Why was it – I mean, we're trying to figure out what Congress intended here, and you're saying it was rational for Congress to want to bar someone in that scenario because why? Right. So subsection B deals with a one-time illegal entry, and there's five exceptions, there's a waiver that's kind of broad, and then you deal with – of repeated illegal entries. And for that instance, Congress determined that that conduct demanded a more serious penalty. But opposing counsel made the point that a minor does not have culpability because does not have the ability to come back alone. So it's the adult that's driving the entry. What's your response to that? I mean, maybe in this situation, maybe it's not, but the fact is that Congress has expressed its intent to exempt minors in some situations, but hasn't done so here. And I will point out also that minors are subject to removal under the INA. So, again, that shows that Congress has decided that, yes, in some situations, minors should be exempted, but in others it's not. And in the case of deportation, minors are certainly subject to removal. So this is consistent with Congress's desire to determine which circumstances are appropriate for exempting minors. And here the statute is plain that they are not exempt under subsection C, like they are under B. I do want to raise one other point with respect to ACOSTA. Our position is that it's good law because it was overruled on other grounds, that this court in its later decision in Garcias-Rodriguez left the issue of statutory construction of B and C with respect to waivers alone. They left that intact. But I will also say that this court in Frutos-Lopez also is an unpublished decision, but the court there again rejected the argument that a waiver in B could be applied to C, and it did so relying on ACOSTA. And, again, that's the Frutos-Lopez case from this court in 2011. I would also point out that if the court were to adopt plaintiff's proffered interpretation, which, again, finds no support in any other case or opinion, it would promote a circuit split because the Tenth Circuit and the Fifth Circuit on the same issue have agreed with ACOSTA's reasoning and pretty much said the same thing that the cost of court did, which is that a minor exception in B does not apply to Section C. I would also like to point out plaintiff's counsel, or Ms. Tolchin, excuse me, has referred to the regulation 42.81D. That regulation is not relevant here. That regulation deals in the instance of when a visa's been denied and the Department of State decides to review that visa denial and issues an advisory opinion, and it talks about the impact of the advisory opinion on the counselor officer. That's not what we're talking about here. But, ultimately, the doctrine protects a counselor's visa decisions, whether or not an advisory opinion is an issue or not. So, again, plaintiff's counsel makes a lot about discretionary determinations and tries to act as if the counselor officer can separate its application of the statute to the facts of the case, but it can't. The visa decision itself incorporates the counselor officer's application of the law to the facts, and so you can't separate out certain parts of that decision that are reviewable and others that are not. That's what the doctrine of counselor non-reviewability is all about. Unless the court has any other questions, I'll just reiterate or sum up that, you know, there's no reason why the court should depart from its prior precedent. Allen holds that there's no review of a counselor officer's visa determination on statutory grounds. Cardenas shows that the counselor officer's denial here satisfies the limited constitutional inquiry that's allowed under DEN, and Acosta supports the counselor officer's application of the INA to the facts of Mr. Barr's case. These cases should compel this court to affirm. Thank you. Any questions? It appears not. Thank you, counsel. Rebuttal? You're muted. I always forget that part. Sorry. Thank you. The first is that, of course, there is no circuit split because there's no precedent decision that's ever been issued on this issue of 1182A9C applying to time spent in the U.S. as a minor. There's out-of-circuit unpublished decisions on the issue and district court decisions. Second, just to address Allen v. Melis, Allen v. Melis is clearly a case involving the application of law to facts. If Allen involved a challenge as to the meaning of a crime involving moral turpitude, then it would take us into the reign we're talking about now, which is the meaning of the INA, which is very similar to what was brought up in Trump v. Hawaii or was also brought up in Allende v. Schultz. That's the meaning of the INA. But we're not talking about the application of law to facts. We're talking about the meaning of the INA. So why wasn't this the application of law to facts? The officer applied the law to the fact that this person was a minor. Why is that not an application of law to facts? Because the question, Your Honor, is what is the law, right? That's always the question. To apply the law to the facts, first the law has to be determined and then applied. Right, but in Allen v. Melis, there was no challenge to what the meaning of the law was. There was no dispute over what a moral turpitude offense or what a drug offense was. It was whether, under those facts, the person fell under the ground. Here we're challenging what is the meaning of the actual INA. It's very similar, again, to Trump v. Hawaii and Allende v. Schultz. Next, to the point of the age. Now, in this case, Mr. Quezada Ibarra was age 18 when he returned. But as the court is aware, the reading of the statute will be applied to any minor, anytime, whenever they come back. And that's the Supreme Court's decision in Clark v. Martinez says that it applies universally all the time. There cannot be subsections read into the reading of a statute. As Judge Wofford, to your point about past consular decisions, we were never given the opportunity to develop the record. Obviously, this was a 12b6 motion, and it was actually decided on consular nonreviewability, not on the Chevron argument. So if that is relevant, we would welcome the opportunity to go and develop that issue. As you sit here today, do you know of any cases that have granted the exception to minors? Your Honor, I did actually look for this. Anecdotally, I did hear that this was the position originally with the Department of State. But I don't have any that I've actually seen. But I have seen this, just to be honest, on the listservs, that this was the policy beforehand. And then, just last, to go to the issue again of lenity. Now, as Ms. Peoples had referenced before, yes, minors are subject to removal. In this case, Mr. Quezada Ibarra was subject to removal because he entered without inspection. But he was granted a waiver. He was granted a waiver called the I-601A waiver, which is why he left the U.S. to meet at the Department of State to come back. And it's at that point, only because that waiver was granted, that he was barred permanently from coming to the U.S. And so given the circumstances of a permanent bar in this case, the court should also consider the application of lenity so that families aren't separated under this grant specifically because of conduct that occurred when the person was a minor. And if there's nothing further, I'll rest, Your Honors. Thank you. Thank you to both counsel for your helpful arguments in this case. Are there any other questions from the panel? No. The case is submitted for decision by the court.
judges: RAWLINSON, WATFORD, Rakoff